UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHRISTOPHER BLOCK, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br><br>DRM, INC.; and DOES 1 to 25,<br><br>Defendants. | Case No. 1:23-cv-1960<br><br>**NATIONWIDE<br>CLASS ACTION COMPLAINT** |

**NATIONWIDE CLASS ACTION COMPLAINT**

COMES NOW, Plaintiff CHRISTOPHER BLOCK ("Plaintiff"), on behalf of himself and all others similarly situated, and asserts as follows:

**INTRODUCTION**

1. Plaintiff, a person with a mobility disability who uses a wheelchair for mobility, brings this action individually and on behalf of all others similarly situated against Defendants, asserting violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA"), and its implementing regulations. Defendant DRM, INC., and DOES 1 through 25 (collectively, "Defendants") collectively own, lease, and/or operate at least ninety-eight (98) Arby's restaurants in the states of Illinois, Iowa, Nebraska, Missouri, Minnesota, and Wisconsin. Plaintiff's claims arise from own his experience with excessive sloping conditions in purportedly accessible parking spaces, access aisles, and curb ramps ("Parking Area" or "Parking Areas") at places of public accommodation owned, operated, controlled, and/or leased by Defendants

("Defendants' facilities"), and from site investigations at fourteen (14) of Defendants' facilities also finding excessive sloping conditions.

2. Plaintiff asserts that these excessive sloping conditions persist in part as a result of Defendants' existing but inadequate internal maintenance procedure, which fails to ensure compliance with the sloping requirements of the ADA's implementing regulations. *See* 28 C.F.R. §§ 36.101 *et seq*.

3. The ADA expressly authorizes the injunctive relief aimed at modification of **existing** policies, practices, or procedures that Plaintiff seeks in this action. In relevant part, the ADA states:

> In the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities. … Where appropriate, injunctive relief shall also include requiring the . . . modification of a policy…
>
> 42 U.S.C. § 12188(a)(2).

4. Based on the extensive factual investigation performed by Plaintiff's investigators, Plaintiff believes and therefore asserts that numerous additional facilities owned, controlled, and/or operated by Defendants have Parking Areas that are, or have become, inaccessible to individuals who rely on wheelchairs for mobility due to excessive sloping, demonstrating that Defendants' existing internal maintenance procedure (discussed at ¶¶ 19-26 below) is inadequate and must be modified. 42 U.S.C. § 12188(a)(2).

5. Plaintiff brings this action individually and on behalf of all other similarly situated wheelchair users to compel Defendants to (i) remediate all access barriers within the Parking Areas of their facilities, and (ii) modify their existing policies to ensure that their facilities comply with the ADA's implementing regulations' excessive sloping requirements. 28 C.F.R. §§ 36.101 *et seq.*

6. Consistent with 42 U.S.C. § 12188(a)(2), Plaintiff seeks a permanent injunction requiring that:

   a. Defendants remediate excessive sloping within the Parking Areas at Defendants' facilities, consistent with the ADA's implementing regulations;

   b. Defendants modify their existing maintenance policy to ensure that the excessive sloping conditions within the Parking Areas at Defendants' facilities do not reoccur; and

   c. Plaintiff's representatives shall monitor Defendants' facilities to ensure that the injunctive relief ordered pursuant to Paragraph 6.a. and 6.b. has been implemented and will remain in place.

7. Plaintiff's claims for permanent injunctive relief are asserted as class claims pursuant to Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) was specifically intended to be utilized in civil rights cases where the Plaintiff seeks injunctive relief for his or her own benefit and the benefit of a class of similarly situated individuals. To that end, the note to the 1996 amendment to Rule 23 states:

> Subdivision(b)(2). This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate . . .. Illustrative are various actions in the civil rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration.

## PARTIES

8. Plaintiff Block is a current resident of Highland Park, and previously was a resident of Lake Forest, Illinois. As described above, as a result of his disability, Plaintiff uses a wheelchair for mobility. Plaintiff suffered an injury in 2016 which resulted in a fracture to his fifth vertebrae, leaving him paralyzed from the chest down. Despite these significant injuries, Plaintiff is an active equestrian and rower. He has recently returned from a scuba diving trip where he learned how to scuba dive with assistance. Prior to his injury, Plaintiff earned a bachelor's degree in mechanical

engineering from Virginia Tech University and a master's degree in biological and systems engineering also from Virginia Tech. Plaintiff worked for various companies as a test engineer until the time of his injury. Since that time, he has persevered through multiple surgeries to regain his strength and the use of his arms.

9. Plaintiff is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2), and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq*.

10. Defendant DRM, Inc., is, and at all relevant times was, an Iowa corporation, doing business in Illinois, as the owner, lessee, and/or operator of dozens of Arby's restaurants in those states. Defendant's principal place of business is located at 5324 North 134th Avenue, Omaha, Nebraska, 68164.

11. The true names and capacities, whether individual, corporate, associate, or otherwise of the Defendants named herein as DOES 1 through 25, are unknown to Plaintiff at this time. Plaintiff will amend this Complaint to assert their true names and capacities when known. Plaintiff is informed and believes and thereon alleges that each of the fictitiously-named Defendants is responsible in some manner for the occurrences alleged in this Complaint.

12. Plaintiff asserts that Defendants, including DOE Defendants, and each of them at all times mentioned in this Complaint, were the alter egos, affiliates, agents and/or employees and/or employers of their Co-Defendants, under shared management, ownership, and common control of each other, and part of a single Franchise Group, and in doing the things alleged in this Complaint were acting within the course of such agency, affiliation, shared management, ownership, control, and/or employment and with the permission and consent of their Co-Defendants.

///

13. Plaintiff is further informed and believes, and based thereon alleges, that Defendants collectively own, lease, and/or operate ninety-eight (98) Arby's restaurants in the states of Illinois, Iowa, Nebraska, Missouri, Minnesota, and Wisconsin, as described herein.

14. Defendants' facilities are places of public accommodation as defined in 42 U.S.C. §12181(7) and are therefore subject to the requirements of the ADA.

## FACTUAL ASSERTIONS

**Plaintiff Has Been Denied Full and Equal Access to Defendants' Facilities**

15. Plaintiff visited Defendants' facilities located at 6802 Rock Valley Parkway, Loves Park, Illinois, on January 22, 2023, where he experienced unnecessary difficulty and risk of physical harm exiting and entering his vehicle and navigating the facilities. Plaintiff needed to exercise extra care to avoid falling and to safely traverse the area, due to excessive slopes in the purportedly accessible Parking Areas, as set forth in more detail below.

16. Despite this difficulty and risk, Plaintiff plans to return to Defendants' facilities. Plaintiff often travels to the area for a variety of reasons. On January 22, 2023, Plaintiff traveled to the nearby area to visit a friend that he scuba dives with. Plaintiff also travels to the area several times a year to participate in the disabled sports events hosted by Mercyhealth Sports Core, and to visit friends that live in the area. He often stops for Arby's on these trips due the convenience of the location, his need to take breaks when driving, and his preference for Arby's vegan fries. Plaintiff intends to dine at Defendants' Loves Park facility during his visits to the area. Furthermore, Plaintiff intends to return to Defendants' facility to ascertain whether it remains in violation of the ADA.

17. As a result of Defendants' non-compliance with the ADA, Plaintiff's ability to access and safely use Defendants' facilities has been significantly impeded and Plaintiff will be

5

deterred from returning to and fully and safely accessing Defendants' facilities due to the discrimination he has previously encountered there.

## Defendants Repeatedly Deny Individuals with Disabilities

## Full and Equal Access to Defendants' Facilities

18. As the owner and/or operator of their facilities, Defendants employ centralized policies, practices, or procedures with regard to the alteration, maintenance, and operation of their facilities.

19. Plaintiff is informed and believes, and based thereon alleges, that, as an Arby's franchisee, Defendants utilize an Arby's Operations Standards Manual (the "Manual") issued by the franchisor. The Arby's franchise disclosure document that Defendants are subject to is similar, if not identical, to a previous version found publicly at https://www.restfinance.com/app/pdf/fdd/Arbys%202019.pdf. It is Plaintiff's belief that the Manual is in Defendants' custody and control and contains 631 pages.

20. Pursuant to the franchise disclosure document, Defendants are provided with the Manual, and access to an Arby's System extranet, www.myarbys.com, that provides information that the franchisee is required to follow—including all of the manual's instructions, requirements, standards, specifications, and procedures at each of their locations. Specifically, the franchise document states, in relevant part:

**ARTICLE 4. OPERATING STANDARDS AND CONDITIONS**

4:1 During the term of this License Agreement:

4:1:1 CONFORM TO MANUAL

Licensee will operate and maintain the Licensed Business in strict compliance with the Manual. Arby's will give Licensee access to one (1) copy of the Manual, which may include audio, video, computer software, other electronic media, written materials, written directives in multiple forms including online postings on the

6

> Arby's System extranet (i.e. www.myarbys.com or its successor), email and/or other electronic communications, facsimiles, or any other medium capable of conveying the Manual's contents. It is Licensee's responsibility to monitor for updates to the Manual. The Manual will, among other things, list the Trademarks to be used in the Licensed Business, and describe the systems, procedures, policies, methods, standards, specifications and requirements for operating the Licensed Business (collectively, the "operating standards").
>
> . . .
>
> The contents of the Manual are confidential and neither Licensee nor any of Licensee's employees or representatives will at any time copy, duplicate, record or otherwise reproduce any part of the Manual.
>
> . . .
>
> Licensee retains the responsibility for the day-to-day management and operation of the Restaurant and implementing and maintaining operating standards at the Restaurant.

21. Plaintiff is further informed and believes that pursuant to the franchise agreements, Defendants are required to maintain the restaurant buildings, drive thrus, parking lots, and landscaped areas at each individual location in conformance with the specifications set forth in the Manual. The franchise document states:

> 5:2 REPAIR AND MAINTENANCE
>
> Licensee shall maintain the Licensed Premises in good condition and state of repair as necessary to comply with and satisfy the requirements of the Manual, including, without limitation, by repairing or replacing (as applicable) any part of the Licensed Premises (including any parking lots), equipment, signage and guest touch points that are not in compliance with the Manual, not in good condition, or not functioning properly.

22. Additionally, the Arby's franchise agreements require remodeling, redecoration, structural changes, and modifications to the restaurants once every ten (10) years.

23. Plaintiff is further informed and believes that pursuant to the franchise agreements, Defendants are required to maintain the restaurant buildings, drive thrus, parking lots, and landscaped areas at each individual location in conformance with the requirements of the ADA and the regulations promulgated thereunder, and to maintain, repair, and/or replace the parking lot,

7

curbs, driveways, and sidewalks on the leased property, as described in the Manual. The franchise document states:

> In addition, you must comply with . . . laws and regulations concerning access to your Arby's Restaurant by persons with disabilities, such as the federal Americans with Disabilities Act which requires readily accessible accommodations for disabled people, along with requirements and standards for building construction, site elements, entrance ramps, doors, seating, bathrooms, drinking facilities, real estate permits and licenses, and operational licenses, etc.
>
> . . .
>
> It is your responsibility to investigate and comply with all laws, ordinances, rules, and regulations that may affect your Arby's Restaurant operations, and to investigate the need for obtaining and maintaining all licenses and permits necessary for your Arby's Restaurant to open and operate.

24. Plaintiff is informed and believes that, pursuant to the franchise agreement, Defendants are required to enter into lease agreements containing specific terms, setting forth, among other things, Defendants' obligations to comply with the requirements of the ADA and the regulations promulgated thereunder, and to maintain, repair, and/or replace the parking lot, curbs, driveways, and sidewalks on the leased property. Plaintiff is further informed and believes, and based thereon alleges, that Defendants have entered into sale-leaseback agreements at several restaurants that are "absolute NNN" or "zero NNN" in nature—for a period of fifteen years—meaning the lessee has absolute responsibility for maintaining all the features of the property and the landlord has no responsibilities for such maintenance.

25. Plaintiff is further informed and believes, and based thereon alleges, that, pursuant to the franchise agreements, Defendants are required to designate a manager to supervise the operation of Defendants' restaurants within designated market areas. This manager is required to have "become certified in the Management Training Program ("MTP") as specified in the Manual[.]" Due to the high number of locations and geographic distances, Defendants manage compliance with their centralized policies, practices, or procedures concerning their daily outside

8

maintenance obligations, and obligations to maintain, repair, and/or replace features within their Parking Areas, through a Director of Operations, who supervises Regional Directors, who in turn directly supervise District or General Managers, and then individual restaurant managers. Plaintiff is informed and believes that, collectively, these positions constitute the "manager" charged with overseeing operations of Defendants' restaurants for compliance with Arby's policies through regular and complete inspections of Defendants' restaurants.

26. Defendants' centralized maintenance and operational policies, practices, or procedures have systematically and routinely resulted in excessive sloping conditions in the Parking Areas of Defendants' facilities, in violation of the ADA and its implementing regulations.

27. On Plaintiff's behalf, investigators examined multiple locations that Plaintiff is informed and believes are owned, controlled, and/or operated by Defendants, and found the following violations which are illustrative of the fact that Defendants' existing policies, practices, or procedures are discriminatory, unreasonable, inadequate, and routinely result in excessive sloping conditions in the parking spaces, accessible routes, and curb ramps:

   a. W6606 WI-23, Fond Du Lac, Wisconsin

      i. The purportedly accessible curb ramp located on the route to the building entrance had a flare exceeding 10.0%[1].

   b. 2040 South Koeller Street, OshKosh, Wisconsin

      i. The purportedly accessible curb ramp located on the route to the building entrance had a flare exceeding 10.0%.

      ii. The purportedly accessible landing at the top of the curb ramp to the building had a exceeding 2.1%.

---

[1] The 2010 Standards at §§ 405.2 and 406.1 set the maximum threshold for ramp running slopes at not steeper than 1:12, i.e., 8.3%, and limit curb ramp flares to not steeper than 1:10 i.e., 10%. The 2010 Standards continued the 1991 Standards without change. *See,* Appendix D to 28 C.F.R. Part 36, § 4.7.5, §4.8.2.

c. 2456 S Oneida Street, Green Bay, Wisconsin

   i. The purportedly accessible curb ramp located on the route to the building entrance had a flare exceeding 10.0%.

d. 601 W Northland Avenue, Appleton, Wisconsin

   i. The purportedly accessible curb ramp located on the route to the building entrance had a flare exceeding 10.0%.

e. 3500 Old Peshtigo Road, Marinette, Wisconsin

   i. The purportedly accessible landing at the top of the curb ramp to the building had a slope exceeding 2.1%.

f. 2101 Morse Street, Janesville, Wisconsin

   i. The purportedly accessible curb ramp located on the route to the building entrance had a flare exceeding 10.0%.

g. 900 Nygaard Street, Stoughton, Wisconsin

   i. The purportedly accessible curb ramp located on the route to the building entrance had a running slope exceeding 8.33%[2].

h. 307 Prairie Vie Road, Chippewa Falls, Wisconsin

   i. The parking surface of one or more purportedly accessible parking spaces and access aisles within the Parking Area had slopes exceeding 2.1%[3].

   ii. The purportedly accessible curb ramp located on the route to the building entrance had a running slope exceeding 8.33%.

i. 8555 Andermatt Drive, Lincoln, Nebraska

---

[2] The 2010 Standards at §§ 405.2 and 406.1 set the maximum threshold for ramp running slopes at not steeper than 1:12, i.e., 8.3%, and limit curb ramp flares to not steeper than 1:10, i.e., 10%. The 2010 Standards continued the 1991 Standards without change. *See,* Appendix D to 28 C.F.R. Part 36, § 4.7.5, §4.8.2.

[3] Pursuant to the ADAAG 2010 Standards, parking spaces or access aisles may not have slopes steeper than 1:48, i.e., 2.1%. *See,* 36 C.F.R. part 1191, § 502.4. The 2010 Standards continued the 1991 Standards without change. *See,* Appendix D to 28 C.F.R. Part 36, § 4.6.3.

      i. The purportedly accessible landing at the top of the curb ramp to the building had a exceeding 2.1%.

j. 5029 S 108th Street, Omaha, Nebraska

      i. The purportedly accessible curb ramp projected into an access aisle.

k. 7241 Vista Drive, West Des Moines, Iowa

      i. The purportedly accessible landing at the top of the curb ramp to the building had a exceeding 2.1%.

l. 3917 NE 14th Street, Des Moines, Iowa

      i. The purportedly accessible curb ramp projected into an access aisle.

m. 10141 N 2nd Street, Machesney Park, Illinois

      i. The purportedly accessible curb ramp projected into an access aisle.

n. 6802 Rock Valley Parkway, Loves Park, Illinois

      i. The purportedly accessible curb ramp located on the route to the building entrance had a running slope exceeding 8.33%.

28. As evidenced by the widespread excessive sloping conditions present in the Parking Areas of Defendants' facilities, absent a change in Defendants' existing procedure, excessive sloping conditions will continue to reoccur in Defendants' facilities even after they have been remediated.

## **JURISDICTION AND VENUE**

29. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

30. Plaintiff's claims asserted herein arose in this judicial district, and Defendants do substantial business in this judicial district.

31. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the events and/or omissions at issue occurred.

11

## **CLASS ASSERTIONS**

32. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2) on behalf of himself and the following nationwide class:

> All wheelchair users with qualified mobility disabilities who encountered accessibility barriers within the Parking Areas of any DRM, Inc.; and DOES 1 to 25 location.

33. <u>Numerosity</u>: The class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective class members through this class action will benefit both the parties and this Court and will facilitate judicial economy.

34. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the members of the class. The claims of Plaintiff and members of the class are based on the same legal theories and arise from the same unlawful conduct.

35. <u>Common Questions of Fact and Law</u>: There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been and/or are being denied their civil rights to full and equal access to and use and enjoyment of Defendants' facilities and/or services due to Defendants' failure to make their facilities fully accessible and independently usable as described above.

36. <u>Adequacy of Representation</u>: Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the class members. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the class, and he has no interests antagonistic to the members of the class. Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA.

37. Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the class as a whole.

## SUBSTANTIVE VIOLATION

## VIOLATION OF THE ADA, TITLE III

## [42 U.S.C. §§ 12101, *et seq.*]

### (Against all Defendants)

38. Plaintiff restates each and every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth herein.

39. At all times relevant to this action, Plaintiff has been substantially limited in the major life activities of mobility. Accordingly, he is an individual with a disability as defined by the ADA, 42 U.S.C. § 12102(2).

40. Defendants own, lease, and/or operate restaurants that are places of public accommodation as defined under Title III of the ADA. 42 U.S.C. § 12181(7)(F).

41. Plaintiff is informed and believes, and based thereon asserts, that Defendants' facilities were altered, designed, or constructed after the effective date of the ADA.

42. The ADA and the franchise agreements require the accessible features of Defendants' facilities, which include Parking Areas of those facilities, to be maintained so that they are readily accessible to and usable by individuals with mobility disabilities.

43. The architectural barriers described above demonstrate that Defendants' facilities were not constructed or altered in a manner that caused them to be readily accessible to and usable by individuals who use wheelchairs, in the first instance, and/or after that were not maintained or operated to ensure that they remained accessible to and usable by individuals who use wheelchairs.

44. Furthermore, the architectural barriers described above demonstrate that Defendants have failed to remove barriers as required by 42 U.S.C. § 12182(b)(2)(A)(iv).

45. Defendants' repeated and systemic failures to remove architectural barriers, to maintain the accessible features of their facilities, and/or modify their existing procedures to ensure compliance with the sloping requirements of the ADA's implementing regulations once constructed constitute unlawful discrimination on the basis of a disability in violation of Title III of the ADA.

46. Defendants' conduct is ongoing and continuous, and Defendants' conduct has harmed Plaintiff.

47. Unless Defendants are restrained from continuing their ongoing and continuous course of conduct, Defendants will continue to violate the ADA and inflict injury upon Plaintiff and the class.

48. Given that Defendants have not complied with the ADA's requirements to make Defendants' facilities fully accessible to, and independently usable by, individuals who use wheelchairs, Plaintiff invokes his statutory rights to declaratory and prospective injunctive relief, as well as costs and attorneys' fees.

## PRAYER FOR DECLARATORY JUDGMENT AND PROSPECTIVE INJUNCTIVE RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the members of the Class, prays for:

a. A declaratory judgment that Defendants are in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendants' facilities, as described above, are not fully accessible to, and independently usable by, individuals who use wheelchairs;

b. A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.501(b) that (i) directs Defendants to take all steps necessary to remove the architectural barriers described above and to bring their facilities into full

compliance with the requirements set forth in the ADA, and its implementing regulations, so that the facilities are fully accessible to, and independently usable by, individuals who use wheelchairs; (ii) directs Defendants to modify their existing procedures to prevent the reoccurrence of excessive sloping conditions in the Parking Areas of their facilities post-remediation; and (iii) directs that Plaintiff shall monitor Defendants' facilities to ensure that the injunctive relief ordered above remains in place.

c. An Order certifying the class proposed by Plaintiff, naming Plaintiff as class representative, and appointing his counsel as class counsel;

d. Payment of costs of suit;

e. Payment of reasonable attorneys' fees pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 36.505; and

f. The provision of whatever other relief the Court deems just, equitable, and appropriate.

Dated: March 28, 2023

Respectfully Submitted,

*/s/ Benjamin J. Sweet*
Benjamin J. Sweet
**NYE, STIRLING, HALE, MILLER & SWEET, LLP**
1145 Bower Hill Road, Suite 104
Pittsburgh, PA 15243
Phone: 412-857-5352
ben@nshmlaw.com


Jordan T. Porter
*(Pro Hac Vice Forthcoming)*
**NYE, STIRLING, HALE, MILLER & SWEET, LLP**
33 West Mission Street, Suite 201
Santa Barbara, CA 93101
Phone: 805-963-2345
jordan@nshmlaw.com


*Attorneys for Plaintiff and the Class*

15